IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAMAR T. McKENSTRY,                     *

      Plaintiff,                       *

           v.                     *        Civil Action No. DKC-24-1636

RAPHAEL GAMBLE, *et al.*,         *

      Defendants.                 *
                               ***

**MEMORANDUM OPINION**

Self-represented Plaintiff Lamar T. McKenstry ("Mr. McKenstry"), an inmate presently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Warden Robert Dean, Lieutenant Eric Walker, Sergeant Fred Hinneh, Correctional Officer Raphael Gamble, Correctional Officer Bridget Atud, Correctional Officer Melvin Norman, Detective Erick Patterson, Hearing Officer Shannon Singleton, Deputy Director Robin Woolford, and Kimberly Redditt.[1]  ECF No. 11.  Mr. McKenstry alleges that his property was confiscated improperly, that he was subjected to excessive force, denied medical care thereafter, and denied due process during the resulting disciplinary proceedings.  ECF No. 11.  He seeks injunctive relief and compensatory and punitive damages.  *Id.*

Defendants Warden Dean, Lieutenant Walker, Sergeant Hinneh, Correctional Officers Gamble, Atud, and Norman, Detective Patterson, Hearing Officer Singleton, Deputy Director Woolford, and Kimberly Redditt filed a motion to dismiss or, in the alternative, for summary judgment.  ECF No. 30.  The court informed Mr. McKenstry, pursuant to *Roseboro v. Garrison*,

---

[1]    The Clerk shall amend the docket to reflect the full and complete names of Defendants.

528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in the dismissal of the complaint.  ECF No. 33.  Mr. McKenstry filed responses in opposition (ECF Nos. 34 and 37),[2] as well as motions for discovery (ECF Nos. 35 and 38) and for the appointment of counsel.  (ECF No. 36).

Having reviewed the submitted materials, the court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2025).  For the reasons set forth below, the Defendants' motion will be granted in part and denied in part.  Mr. McKenstry's Complaint will be dismissed as to Defendants Warden Dean, Kimberly Redditt, Deputy Director Woolford and Hearing Officer Singleton.  Mr. McKenstry's official capacity, due process, lost property, and conspiracy claims will be dismissed for failure to state a claim.  Summary judgment will be granted to Defendants Correctional Officers Gamble, Norman, and Atud, Sergeant Hinneh, and Lieutenant Walker as to Mr. McKenstry's claims regarding denial of medical care.  Summary judgment will be denied to Defendants Correctional Officers Gamble, Norman, and Atud, Sergeant Hinneh, and Lieutenant Walker as to Mr. McKenstry's claims regarding excessive force. Mr. McKenstry's motion to appoint counsel will be granted and his other motions denied.

## BACKGROUND

### A.    Mr. McKenstry's Allegations

In his unverified Second Amended Complaint, which serves as the operative pleading, Mr. McKenstry names as Defendants Warden Robert Dean, Lieutenant Eric Walker, Sergeant Fred Hinneh, Correctional Officer Raphael Gamble, Correctional Officer Bridget Atud, Correctional

---

[2]    Mr. McKenstry's responses in opposition were docketed as a "Motion to Dismiss, or in the Alternative Motion for Summary Judgment and Suppression of Evidence" (ECF No. 34) and "Objections" (ECF No. 37).  The documents are responses to Defendants' dispositive motion and motions to seal, and have been considered as such.  Mr. McKenstry's "Motion to Dismiss" is therefore denied.

Officer Melvin Norman, Detective Erick Patterson, Hearing Officer Shannon Singleton, Robin Woolford, and Kimberly Redditt.  ECF No. 11 at 1.  He explains that on the morning of October 24, 2023, while confined at Jessup Correctional Institution ("JCI"), Correctional Officer Norman, Sergeant Hinneh, and Officer Fredericks conducted a search of his cell and improperly confiscated a mattress that he was authorized to have.  *Id*. at 7.  Correctional Officer Norman issued Mr. McKenstry a "ticket" for possessing/passing contraband and for possessing/tampering with/destroying security equipment or property.  *Id*.  Mr. McKenstry attempted to explain to the officers that he was authorized to have the two mattresses.  *Id*.

Later, Mr. McKenstry walked past Correctional Officers Norman and Atud and called them "corrupt."  *Id*. at 8.  Mr. McKenstry then took his medical order for two mattresses to the control room and asked for the return of his mattress.  *Id*.  The officer directed Mr. McKenstry to go to property.  *Id*.  On his way, Mr. McKenstry came upon Correctional Officer Gamble and as Mr. McKenstry spoke to Correctional Officer Gamble, Lieutenant Walker and Sergeant Hinneh rushed out of the building and threw Mr. McKenstry to the ground.  *Id*. at 10.  They reported that Correctional Officers Norman and Atud claimed that Mr. McKenstry spat on them and then ran off the tier and out of the building.  *Id*.  Mr. McKenstry attempted to explain that he did not spit on anyone.  *Id*.  During the altercation, Mr. McKenstry's medical order was destroyed.  *Id*.

Mr. McKenstry was escorted to medical by Defendants Sergeant Hinneh, Lieutenant Walker, and Officer Gamble.  ECF No. 11 at 10.  During the escort, Sergeant Hinneh's grip tightened, causing the handcuffs to cut into Mr. McKenstry's wrist.  Mr. McKenstry asked Sergeant Hinneh to loosen his grip, but he refused to do so and cursed Mr. McKenstry.  *Id*.  Lieutenant Walker refused Mr. McKenstry's request for assistance.  *Id*.  When they arrived at the medical unit, Mr. McKenstry leaned to the left to try to alleviate the pressure on his wrist, but he

was thrown against the walls by Officer Gamble and "beaten ferociously." *Id.*  Mr. McKenstry was punched in the face and suffered a swollen and bruised lip and lacerations and bruises on his wrist. *Id.*

As a result of the incidents, Mr. McKenstry wrote an administrative remedy procedure ("ARP") to Warden Dean which was dismissed.  ECF No. 11 at 10.  Mr. McKenstry's appeal of the Warden's decision was dismissed by Kimberly Redditt at the Commissioner's office.  *Id.* at 11.  Both Warden Dean and Kimberly Redditt dismissed Mr. McKenstry's complaint because the matter was "under investigation." *Id.*  Mr. McKenstry's appeal to Deputy Director Woolford at the Inmate Grievance Office ("IGO") was also unsuccessful.  *Id.*  Initially, Deputy Director Woolford dismissed the appeal because the matter was under investigation and then subsequently dismissed the appeal because Mr. McKenstry was found guilty of engaging in a disruptive act, assaulting officers, and being in an area without authorization.  *Id.*

Mr. McKenstry explains that on November 3, 2023, a disciplinary hearing was conducted by Hearing Officer Singleton.  Despite his pleading not guilty, Hearing Officer Singleton, after reviewing the video footage and Mr. McKenstry's explanation of events, found him guilty.  *Id.* His appeals of the disciplinary hearing decision were denied.  *Id.*  As a result of the hearing, he lost good conduct credits, was confined to disciplinary segregation, and suffered loss of privileges. *Id.* at 12.  He asserts that Warden Dean, Deputy Director Robin Woolford, and Kimberly Redditt "caused [him] harm" because they "failed to do their job" and "dismissed" his ARP complaints, appeals, and grievances.  *Id.* at 13.

On December 12, 2023, Mr. McKenstry was served with a criminal summons filed by Detective/Sergeant Patterson charging him with assault on Correctional Officers Norman, Atud and Gamble.  ECF No. 11 at 12-13.

4

Mr. McKenstry seeks compensatory and punitive damages as well as injunctive and declaratory relief.  ECF No. 11 at 8.

### B.    Defendants' Response

As a result of the incident, the Internal Investigation Division ("IID") was contacted and Deputy Sergeant Valerie Johnson and then Sergeant Patterson were assigned to investigate the matter. ECF No. 31-1 at 3-7.  The use of force/serious incident reports prepared by the officers, as well as information provided to the IID investigator, confirm the information in the officers' affidavits supporting the Notice of Inmate Rule Violations ("NOIRV") and provide additional details.  ECF No. 31-3 at 3-60 (serious incident report).  As a result of the IID investigation, Detective Patterson submitted an application of charges and Mr. McKenstry was issued a criminal summons charging him with the second-degree assault of Correctional Officers Norman, Gamble, and Atud.  ECF No. 31-1 at 37-39.[3]

Mr. McKenstry was housed at JCI on October 24, 2023.  ECF No. 30-1 at 4.  On that day, Correctional Officer Norman, Sergeant Hinneh, Correctional Officer Gamble, and Officer Hendricks conducted a random search of Mr. McKenstry's cell.  ECF No. 31-1 at 25.  As a result of the search, an extra mattress[4] and torn sheets, used to obscure viewing inside the cell, were confiscated and a broken heater with missing parts discovered.  *Id*.  Mr. McKenstry was advised that he would receive NOIRV regarding the property. *Id*.

As to Mr. McKenstry's altercations with the officers, Correctional Officer Atud submitted a NOIRV regarding the incident.  ECF No. 31-1 at 16.  In her notice, Correctional Officer Atud

---

[3]    Ultimately, those charges were nolle prosed on July 25, 2024.  *See State of Maryland v. McKenstry,* Crim Case D-07-CR-23-20992 (Anne Arundel Co. Dist. Ct.) https:/mdecportal.courts.state.md.us (last visited Feb. 10, 2026).

[4]    There is no evidence in Mr. McKenstry's medical records that he had a medical order in place requiring the use of a second mattress.  ECF No. 30-2, ¶ 3.

averred that on October 24, 2023, Mr. McKenstry walked toward her and spat on her right wrist and leg and then walked off the tier. *Id*. Correctional Officer Atud ordered Mr. McKenstry to stop but he continued to walk away. *Id*. Correctional Officer Atud notified Sergeant Hinneh and Lieutenant Walker of the incident. *Id*.

In his NOIRV, Lieutenant Walker averred that Correctional Officers Atud and Norman notified him that Mr. McKenstry spat on them and then fled the scene. ECF No. 31-1 at 20. Mr. McKenstry met Officer Gamble on the compound walk but refused orders to be handcuffed and "snatched away" from Lieutenant Walker as he attempted to handcuff him. *Id*. Mr. McKenstry was taken to the ground to gain control and apply the restraints. *Id*. After he was secured, he was assisted to his feet and taken to medical. *Id*.

Correctional Officer Gamble confirmed that he saw Mr. McKenstry on the compound and asked what was wrong. Mr. McKenstry replied that he was trying to go to medical and Correctional Officer Gamble stopped him. ECF No. 31-1 at 6. Lieutenant Walker and Sergeant Hinneh advised Correctional Officer Gamble that Mr. McKenstry was going to lock-up because he spat on two officers. *Id*. Mr. McKenstry was combative, refused orders, and pulled his hand away from Lieutenant Walker. *Id*. Mr. McKenstry was taken to the ground so that leg irons and handcuffs could be applied. *Id*. Lieutenant Walker handcuffed Mr. McKenstry's left arm to his waist because his right arm was in a cast. *Id*. Additionally, Correctional Officer Gamble reported that while being escorted, Mr. McKenstry spat on him and attempted to punch him, Sergeant Hinneh, and Lieutenant Walker. They then held Mr. McKenstry against the wall to avoid assault and to gain control. ECF No. 31-1 at 20; ECF No. 31-1 at 8. Medical evaluated and cleared Mr. McKenstry. ECF No. 31-1 at 20.

The tier videos, which do not have any audio,[5] generally confirm the officers' descriptions of the October 24 incident.  Surveillance Video Part 1, (filed separately at Exhibit C),[6] shows Mr. McKenstry (wearing a gray hood, white shirt & blue trousers) walk out of his cell toward the front of the tier.  *Id*. at B-1 Merged 9:47:16.[7]  As he walks past one officer near his cell door, he turns and goes back toward the officer and may appear to spit at the officer (*id*. at C-1 Merged, 10:04:16) and as he approaches the officer at the end of the hall he turns and may appear to spit on that officer.  *Id*. at B-1 merged at 9:47:16-09:47:20.  The officers are identified in Defendants' papers as Correctional Officers Norman and Atud.  Each officer reacts as though he or she were spit at. *Id*. at C-1 Merged at 10:04:16; B-1 Merged at 9:47:20.

Surveillance Video, Part 2 (ECF No. 30-7, Ex. E, filed separately, 208 Door 6.49),[8] shows officers identified by Defendants as Sergeant Hinneh and Correctional Officer Gamble escorting Mr. McKenstry (with the hood off) down the hall while holding his upper arms.  *Id*. at 9:45:05-9:45:17.  Mr. McKenstry drags his feet and pushes and pulls away from the officers.  A person Defendants say is Lieutenant Walker comes to assist.  *Id*. at 9:45:18-9:45:45.  As Mr. McKenstry and the officers arrive at the end of the hallway, a scuffle takes place.  *Id*. at 9:45:40-9:45:46.  Eventually, Mr. McKenstry was pinned to the wall.  *Id*. at 9:45:47.  Another officer also arrived to assist as Mr. McKenstry continued to be combative and continued to pull away from the three

---

[5]   Mr. McKenstry was shown the videos on February 21, 2025.  ECF No. 30-4, ¶¶ 3-6 (Clise, Decl.).

[6]   Surveillance Video Part 1, filed separately as Exhibit C, ECF No. 31, contains two videos labeled "B-1 Merged" and "C-1 Merged".

[7]   The video time stamps are different than those cited by Defendants.

[8]    Surveillance Video Part 2, filed separately as Exhibit E, ECF No. 30-7, contains three videos labeled "208 Door 6.49", "Medical Treatment Front Ent. 6.38", and "MPB 208 Inner Dr and Med Ent 6/48."

officers.  *Id*. at 9:45:48.  One correctional officer again attempted to push Mr. McKenstry against the wall.  *Id*. at 9:45:49.  After Mr. McKenstry was brought under control by the four officers, (*id*. at 9:46:20) the officers sat Mr. McKenstry on a bench and then, a few minutes later, continued his escort to medical.  *Id*.  at 9:46:20-9:51:28.  The second camera angle (ECF No. 30-Ex. E, filed separately, Medical Treatment Front Ent. 6.38), shows Mr. McKenstry being brought onto the medical unit at 9:51:48.  He is escorted by four officers, two holding his upper arms, one in front of him, clearing the corridor, and one behind.  *Id*.  He is compliant and walks down the hallway and into a treatment room without any apparent difficulty.  *Id*. at 9:51:48-9:52:03; *see also* ECF No. 30-Ex. E, MPB 208 Inner Dr and Med Ent 6.48 at 09:51:41 (filed separately).  He is subsequently escorted, without incident, off of the medical unit.  ECF No. 30-Ex. E, Medical Treatment Front Ent 6.38 at 10:11:42 (filed separately).

As a result of the incident, Mr. McKenstry was served NOIRVs on October 26, 2023.  ECF No. 31-1 at 15.  He was charged with violating a number of rules including violating: Rule 100 - engage in a disruptive act; Rule 101 - commit assault or battery on staff; Rule 316 - disobey an order; and Rule 402 - entering or being in a location without authorization.  *Id*.

The disciplinary hearing was held on November 3, 2024.  ECF No. 31-1 at 23-28.  In ruling on the charges, Hearing Officer Singelton considered the sworn NOIRVs, Mr. McKenstry's testimony, the officers' testimony, and the video evidence presented by the institutions.  *Id*.  Mr. McKenstry was found guilty of committing assault and/or battery on staff, engaging in a disruptive act, and entering a location without authorization.  *Id*.  Mr. McKenstry was sanctioned to sixty days disciplinary segregation and ninety days of good conduct credits were revoked.  *Id*.

Mr. McKenstry appealed the hearing officer's decision to the Warden, who denied the appeal.  ECF No. 30-9, ¶ 2.  His appeal to the IGO was dismissed on January 30, 2024, based on

a finding that Mr. McKenstry "failed to effectively challenge the sufficiency of the evidence underlying the finding of guilty."  ECF No. 30-9 at 6; ECF No 30-9,  ¶ 3.

Additionally, Mr. McKenstry filed three administrative remedies (ARPs) regarding the use of force and alleged denial of medical care.  ECF No. 30-9 at ¶¶ 4, 5, 6; ECF No. 30-9 at 13.  The ARPs were each dismissed at the institutional level.  *Id*.  Mr. McKenstry appealed the dismissal of the ARPs to the IGO which dismissed each grievance as lacking in merit.  ECF No. 30-9 at ¶¶ 4, 5, 6.

Mr. McKenstry's medical record demonstrates that after he was escorted to medical, he was evaluated by Kelsey Robinson, RN.  ECF No. 31-2 at 5-6.  Mr. McKenstry reported being assaulted by officers, including being punched in the face, and that he had lacerations on his wrist due to the handcuffs being tight.  *Id*. at 6.  He was described as agitated, but Nurse Robinson did not observe any "obvious injury to any part of the body."  *Id*.  Mr. McKenstry insisted he had a cut on his lip, but Nurse Robinson could not see one.  *Id*.  She did note a small laceration on his inner left wrist where the handcuffs were placed.  *Id*.  No other injuries on Mr. McKenstry's face or body were observed.  *Id*.

On November 16, 2023, Mr. McKenstry was seen by NP Emelogu due to his complaints of left-hand injury.  *Id*. at 7.  Mr. McKenstry reported that he was beaten by officers on October **28**, 2023, and his left hand slammed on the wall.  *Id.* (Emphasis added).  No swelling or redness was noted but there was tenderness with healed skin lacerations.  He was provided ibuprofen and x-rays were ordered.  *Id*. at 9.  The results of the x-ray were reviewed with Mr. McKenstry on December 1, 2023. *Id*. at 11.  No evidence of acute fracture was shown on the x-ray.  *Id*.  Because Mr. McKenstry continued to complain of pain, the provider indicated he would be referred to the orthopedist.  *Id*. at 13.

### C.    Mr. McKenstry's Responses

In both papers responding to Defendants' motions, Mr. McKenstry reiterates that his 8th Amendment claim is based on his being slammed against the wall several times and being beaten and punched while he was already subdued and restrained, causing him physical harm.  ECF No. 34 at 1; ECF No. 37 at 1. He argues that a reasonable person would view the surveillance footage as showing that officers punched him multiple times while he was restrained/pinned to the wall by other officers. ECF No. 34 at 2-3; ECF No. 37 at 2-3. Mr. McKenstry asserts that there are numerous material facts in dispute. ECF No. 34 at 3; ECF No. 37 at  2. In particular, he denies running off the tier or building without permission and disputes that he was combative and/or refused orders. *Id*.

Mr. McKenstry explains that, although he was evaluated by medical staff shortly after being assaulted, medical staff and/or prison officials refused to take photos of his injuries. ECF No. 34 at 2; ECF No. 37 at 2. He says the photographs would have shown a laceration on his left wrist with swelling and discoloration and swelling/laceration on the inside of his lip with discoloration. *Id*. He says that the medical records contain discrepancies, although he does not detail them. *Id*.[9]

### STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

---

[9]    Mr. McKenstry agrees that only the individual capacity claims asserted against Defendants can proceed.  ECF No. 34 at 1; ECF No. 37 at 1.

omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

When the moving party styles its motion as a motion to dismiss or, in the alternative, motion for summary judgment, as is the case here, and attaches additional materials to the motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court, and the court can treat the motion as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Nevertheless, summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw*, 2023 WL 1486310, at *4; *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).

To raise the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  *See Shaw*, 2023 WL 1486310, at *4; *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods*, 302 F.3d at 244 (citations and quotations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Mr. McKenstry has not requested discovery under Rule 56, nor has he filed an Affidavit in compliance with Rule 56(d). Nevertheless, he filed motions for discovery after Defendants filed their dispositive motion. In his first Motion for Discovery, Mr. McKenstry states that he is entitled to discovery pursuant to "Rule 12(b)(1)", which he argues requires "each party to produce certain information even if no one asks for it." ECF No. 35. He requests that the surveillance footage, medical records, and investigative reports be emailed to his Power of Attorney. *Id.* There is no requirement that the court provide documents to non-parties. More importantly, Mr. McKenstry was directly provided with copies of the documents and access to the videos he requested be sent to his attorney in fact.

In his second "Motion for Discovery/Discovery Tools", Mr. McKenstry proposes interrogatories. ECF No. 38. The "interrogatories" propounded concern information already in Mr. McKenstry's possession either because it is within his personal knowledge or because it has already been supplied to him by Defendants as exhibits to their dispositive motion. For example, in regard to the criminal charges filed against him as a result of the IID investigation, he asks whether IID filed criminal charges against him, who participated in the investigation, and the

13

ruling of the state court in regard to those charges. But as evidenced by both Mr. McKenstry's complaint and Defendants' dispositive motion, he already has this information.

Mr. McKenstry also asks whether any officer punched him while he was against the wall; whether there was DNA testing to confirm he spat on Defendants; whether any officers were reprimanded; whether Defendant Singleton reviewed all of the video evidence during his disciplinary hearing; and whether medical staff treated or merely observed him after the incident. *Id*. He also asks why he was not immediately subdued after he spat on the officers and whether the video actually showed spit coming out of his mouth. *Id*. at 3. Mr. McKenstry offers no argument as to why this information is essential to his opposition. Nor does he explain how that information would create a genuine issue of material fact sufficient to defeat summary judgment. As such, to the extent that Mr. McKenstry has requested additional information, his request is denied, and the court shall consider Defendants' motion, in part, as one for summary judgment.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).

Because Mr. McKenstry is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015).  Nevertheless, the Fourth Circuit

> has repeatedly cautioned against misuse of *Scott*'s "narrow exception" to the general rule that a court must adopt "the plaintiff's version of the facts" when considering a summary judgment motion. *Lewis v. Caraballo*, 98 F.4th 521, 529 (4th Cir. 2024) (first quote); *Scott*, 550 U.S. at 378, 127 S.Ct. 1769 (second quote).[2] A court may not disregard contrary evidence just because there is a video that lines up with "a governmental officer's version of events" or "even makes it unlikely that the plaintiff 's account is true." *Witt v. West Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (first quote); *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019) (quotation marks removed) (second quote). Instead, a court considering a defendant's summary judgment motion may discount a plaintiff 's first-hand account "*only* [1] when there is evidence ... of undisputed authenticity that [2] shows some material element of the plaintiff 's account to be *blatantly and demonstrably* false" [3] such "that no reasonable jury could" credit the plaintiff's version of events. *Harris*, 927 F.3d at 276 (emphases added and quotation marks removed) (first quote); *Scott*, 550 U.S. at 380, 127 S.Ct. 1769 (second quote).

*Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024).

# DISCUSSION

Defendants have moved to dismiss the complaint or for summary judgment in their favor, arguing that: (1) under the Eleventh Amendment they are immune from suit for claims asserted against them in their official capacity; (2) Mr. McKenstry fails to state an Eighth Amendment Claim as to alleged use of excessive force and alternatively they are entitled to summary judgment; (3) Mr. McKenstry fails to state an Eighth Amendment claim for denial of medical care, and alternatively they are entitled to summary judgment; (4) Mr. McKenstry has not alleged sufficient personal participation as to Defendants Warden Dean, Deputy Director Robin Woolford, or Kimberly Redditt and failed to state a claim of supervisory liability; (5) Mr. McKenstry failed to state a claim for violation of his due process rights, and alternatively they are entitled to summary judgment; (6) Mr. McKenstry failed to state a claim of conspiracy; (7) Mr. McKenstry's claims regarding his personal property do not state a constitutional claim; and (8) Defendants are entitled to qualified immunity.

## A.    Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-204(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Accordingly, Defendants are immune from suit for actions against them in their official

16

capacities and such claims for monetary damages asserted against them in their official capacity must be dismissed. Mr. McKenstry agrees.

### B.    Respondeat Superior

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

The defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive

practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Mr. McKenstry has not alleged that Defendants Warden Dean, Deputy Director Robin Woolford or Kimberly Redditt personally participated in the alleged constitutional violations. Mr. McKenstry simply names Warden Dean, Deputy Director Robin Woolford, and Kimberly Redditt, as defendants and complains that they had a hand in dismissing his administrative grievances and appeals to the IGO, without providing any additional specific allegations against them. However, the mere receipt or denial of Mr. McKenstry's grievances does not alone impose liability. *See Chukwurah v. Corizon Health Care,* No. CV PX-22-212, 2023 WL 4268556, at *6 (D. Md. June 29, 2023) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")), *aff'd,* No. 23-6716, 2024 WL 1405885 (4th Cir. Apr. 2, 2024). Nothing in the complaint provides any indication that Mr. McKenstry has a viable claim against Warden Dean, Deputy Director Robin Woolford, and Kimberly Redditt. Accordingly, they are entitled to dismissal of the claims against them.

### C.    Excessive Force

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. Amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous

punishments." *Estelle*, 429 U.S. at 103. The Eighth Amendment "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, it "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being").

The Fourth Circuit has determined that "not all Eighth Amendment violations are the same; while some constitute 'deliberate indifference' others constitute 'excessive force.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). Whether a prison official used excessive force is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The court must look at the necessity for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321. The absence of significant injury, alone, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). While the extent of injury incurred is one factor in determining the necessity of force in a particular situation, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

As to the use of force, there are material disputes of fact as to whether Defendants' use of force was reasonable. The only uncontroverted evidence is that on October 24, 2023, Defendants

Correctional Officers Norman and Gamble and Sergeant Hinneh were tasked with searching Mr. McKenstry's cell.  Thereafter the parties' version of events diverge.

Defendants explain that Mr. McKenstry, apparently upset by the confiscation of his mattress and/or the knowledge that he would receive a rule violation regarding property found in his cell, spat on officers and left the housing unit without permission. Mr. McKenstry denies both spitting on the officers or leaving the housing unit without permission.

Once on the compound, Defendants contend that Mr. McKenstry was directed to submit to being restrained, but he refused to do so, and the officers took him to the ground in order to apply restraints.  Mr. McKenstry denies being combative or refusing orders. ECF No. 37 at 2. During the escort to medical, Mr. McKenstry explains that he was slammed against the wall several times and beaten and punched after  he was  subdued and restrained. He explains that when they arrived at the medical unit, he leaned to the left to try to alleviate the pressure on his wrist, but was thrown against the walls by Officer Gamble and "beaten ferociously."  ECF No. 11 at 10.  Defendants dispute this, explaining that they used only the force necessary to gain Mr. McKenstry's compliance with their orders and escort and that he was non-compliant and assaultive during the escort.

The video evidence does not clearly and unequivocally support either version of events. First the video evidence of the "spitting" is open to interpretation. While it appears that Mr. McKenstry spits on the officers, it may be that he moved toward them calling them "corrupt" as he asserts.  Next, the video evidence shows Mr. McKenstry walk to the end of the housing unit, but there is no video of him leaving the unit and entering the compound, nor is there any video of what transpired on the compound.  Defendants assert that Mr. McKenstry's entry onto the

compound was unauthorized, but he claims that he was told to go to property to retrieve his mattress.

Lastly, the videos of Mr. McKenstry's escort to the medical unit are also open to interpretation, particularly given that most of the altercation occurs at the end of the hallway which is at the end of the camera range.  While it appears that Mr. McKenstry is resisting the escort, it may be, as he claims, that he only did so to alleviate the pressure on his wrist and that Defendants unnecessarily pushed him into the wall. There is no sound accompanying the video to discern what Mr. McKenstry or the officers said to each.

The court cannot determine on this record whether the application of force was necessary, where as here, the parties dispute the basis of the need for force e.g. whether Mr. McKenstry assaulted staff by spitting on them and/or was out of bounds. While Mr. McKenstry's submissions are unverified, Defendants do not object to them or argue that they could not be made admissible at trial, and the court is mindful that exhibits need not be in admissible form to be considered at the summary judgment stage, provided they could be put in admissible form. Fed. R. Civ. Pr. 56(c)(2); *see also Sanchex Carrera v. EMD Sales, Inc.,* 402 F. Supp. 128, 139 (D. Md. 2019). Mr. McKenstry's evidence is based on his personal knowledge of the events as they unfolded and his testimony would be admissible at trial. Thus, he has demonstrated that there are material disputes of facts. Because the record does not clearly establish whether the officers acted "maliciously and sadistically for the very purpose of causing harm" or "in a good faith effort to maintain or restore discipline," *Whitley,* 475 U.S. at 320–21 (internal quotation marks omitted), summary judgment is not appropriate on this claim

21

D.    **Denial of Medical Care**

To the extent that Mr. McKenstry alleges that he was denied constitutionally adequate medical care after the use of force or when his mattress was confiscated, these claims are unavailing.  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his [/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Here there is no evidence that Mr. McKenstry had a serious medical need. First, as to the use of force, the only objective evidence of injury was a laceration on his wrist. Although, Mr.

McKenstry states that he also suffered a cut on his lip, a cut or bruised lip is not a serious medical need. Secondly, as to his need for a second mattress, his medical record does not support his claim that he had a medical need for the mattress.

Mr. McKenstry's claims also fail on the subjective prong. As to the use of force, Mr. McKenstry was immediately taken to the medical unit for evaluation, and it was determined by medical staff, not any of the named Defendants, that he did not require any additional treatment at that time and was cleared to return to a housing unit. He does not allege that any of the named Defendants interfered with or directed what medical care was to be provided. Moreover, he was subsequently provided follow up care regarding his reported injuries, including an x-ray and analgesic medication. Thus, Defendants cannot be said to have been indifferent to a serious medical need. Similarly, there is no evidence that any named Defendant was indifferent to Mr. McKenstry's medical need for a second mattress, as there is no evidence he had such a need or that such a need was obvious. Accordingly, Defendants Correctional Officers Norman, Gamble, and Atud, Sergeant Hinneh, and Lieutenant Walker are entitled to summary judgment on this claim.

### E.    Due Process

Mr. McKenstry claims that his disciplinary hearing based on the October 24, 2023, incident was unfair. ECF No. 11. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written

24

statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet."),

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-72. Further, a challenge to the validity of a prison disciplinary judgment may not be raised in a § 1983 civil rights action where, as here, the judgment has not been overturned through state procedures. *Moskos v. Hardee*, 24 F.4th 289, 295 (4th Cir. 2022).

Mr. McKenstry's disciplinary proceedings have not been overturned. Under Maryland law, the guilty findings can be challenged through an appeal to the warden and a subsequent complaint filed with the IGO. *See* Md. Code Regs. ("COMAR") 12.03.01.30(A) and (C). Mr.

McKenstry does not allege his disciplinary charges have been overturned and therefore this claim must be dismissed.

### F.    Loss of Property

To the extent that Mr. McKenstry's claim is construed as one regarding the improper confiscation of his mattress, such a claim is unavailing. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[10] The Supreme Court extended its *Parratt* holding to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533, (1984). Therefore, even though Mr. McKenstry's mattress was taken, the claim does not amount to a constitutional violation and must be dismissed for failure to state a claim.

### G.    Conspiracy

To the extent that Mr. McKenstry intended to assert a conspiracy claim, that claim is also subject to dismissal. Mr. McKenstry asserts that he was harmed by the false reports and infractions written by Correctional Officers Norman, Gamble, and Atud, and Lieutenant Walker. (ECF No. 11 at 12-13). And Detective Patterson relied on those false reports and infractions to "file false charges against [him]." *Id*. To establish a civil conspiracy under § 1983, Plaintiff must present evidence that Defendants acted jointly in concert and that some overt act was done in furtherance

---

[10]    Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

of the conspiracy, which resulted in deprivation of a constitutional right.  *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  A plaintiff asserting a claim of conspiracy has a "weighty burden."  *Barret v. Pae Government Services, Inc.*, 975 F.3d 416, 434 (4th Cir. 2020), quoting *Hinkle*, 81 F.3d at 421.  An essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators.  *See Ballinger v. N.C. Agric. Extension Serv.*, 655 F.3d 342, 346 (4th Cir. 1987).  Without an agreement, the independent or parallel conduct of two or more wrongdoers does not amount to a conspiracy.  *See A Society Without A Name v. Virginia*, 639 F.2d 1073, 1075-76 (4th Cir. 2011).  "A conspiracy may . . . be 'inferred from the things actually done.'"  *Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.*, 639 F.2d 1073, 1075 (4th Cir. 1981) (quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp 499, 532 (E.D. Mich. 1974)).  However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law.  *Murdaugh*, 639 F.2d at 1075.  Here, Mr. McKenstry seemingly claims that Defendants conspired to file false charges against him, but he offers no factual allegations that would raise such a claim above speculation. The conspiracy claim must therefore be dismissed.

###    H.    Qualified Immunity

Defendants assert they are entitled to qualified immunity because, among other things, it was not clearly established at the time of the incident that their actions constituted an excessive use of force.  ECF No. 30-1  at 21.  The United States Court of Appeals for the Fourth Circuit has summarized the qualified immunity analysis.

> Officers are immune from liability "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have been known." (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added).  This standard leads to two questions: (1)

whether any right was violated, (2) whether that right was "clearly established" at the time of the alleged violation. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"[T]o conclude that a right is "clearly established," we must inquire whether an objectively reasonable officer in the defendant's shoes would "understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We examine the alleged right at a "high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). . . But, by the same token, a rejection of excessive generality does not equate to an insistence on exactitude. Few situations are exactly the same and to require that plaintiffs produce identical precedent would transform qualified immunity into a grant of absolute immunity for defendants.

*Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025).

As discussed, the court finds that Mr. McKenstry, has adequately alleged a violation of a constitutional right and the first prong of the qualified immunity analysis is met. The second prong requires the court to determine whether Defendants Correctional Officers Norman, Gamble, and Atud, Sergeant Hinneh, and Lieutenant Walker should have known that their conduct constituted an excessive use of force at the time the actions occurred. Defendants do not provide a fact based legal analysis to support their assertion that they are entitled to qualified immunity on Mr. McKenstry's excessive force claim. Nevertheless, the inquiry here is whether it was clearly established at the time of the events complained of that Defendants' conduct as alleged in the Amended Complaint, was sufficiently clear such that every reasonable official would understand that what he was doing was unlawful. Mr. McKenstry alleges that while subdued and restrained, Defendants violently beat him causing him physical harm. The qualified immunity defense which relies on a factual dispute fails on this record.

## I.    Appointment of Counsel

Mr. McKenstry also filed a Motion to Appoint Counsel (ECF No. 36) wherein he states he is unable to afford counsel, has attempted to retain counsel, his imprisonment limits his ability to

litigate the case, and the issues are complex and serious. *Id.* at 1. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). In light of the foregoing and the apparent need for a scheduling order and to conduct discovery as to Mr. McKenstry's excessive force claim, counsel shall be appointed to represent Mr. McKenstry.

## CONCLUSION

For the foregoing reasons, the Defendants' motion is granted in part and denied in part. Mr. McKenstry's official capacity, due process, lost property, and conspiracy claims are dismissed. His claims asserted against Defendants Warden Dean, Deputy Director Robin Woolford, and Kimberly Redditt are also dismissed. Summary judgment is granted in favor of Defendants Lieutenant Walker, Sergeant Hinneh, and Correctional Officers Gamble, Atud, and Norman as to Mr. McKenstry's claim of denial of medical care. Summary judgment is denied to Defendants Lieutenant Walker, Sergeant Hinneh, and Correctional Officers Gamble, Atud, and Norman as to Mr. McKenstry's claim of excessive use of force. Pro Bono counsel will be appointed for Mr. McKenstry.

A separate order follows.


Date:   February 26, 2026                         /s/
                                         DEBORAH K. CHASANOW
                                         United States District Judge